SCHWARTZ, Chief Judge.
The issue in this case is whether the grantee of a single clerk’s deed encompassing 158 separate single-family condominium units' purchased at a foreclosure sale falls within the exception to the documentary surtax provided by chapter 83-220, Laws of Florida and adopted by Dade County. We agree with the trial court which entered judgment for the county and the Department of Revenue that it does not.
The dispositive portion of the statute, which was adopted for the purpose of providing funds for low and middle income housing,[1] provides as follows:
Such surtax shall apply only to those documents taxable under s. 201.02, except that there shall be no surtax on any document pursuant to which the interest granted, assigned, transferred, or conveyed involves only a single-family residence. Such single-family residence may be a condominium unit, a unit held through stock ownership or membership representing a proprietary interest in a corporation owning a fee or a leasehold initially in excess of 98 years, or a detached dwelling, [emphasis supplied] [2]
Ch. 83-220, Laws of Florida. Applying one of the most basic rules of statutory construction, that words of common usage are to be given their ordinary meaning, 49 Fla. Jur.2d Statutes § 123 (1984), it is entirely clear that the exception to the generally phrased surtax applies, as it says, “only” when “a” single deed conveys one single-family residence and nothing else. In other words, if, as here, a deed involves more than one residence (or one home in addition to other property), the general provision, and not the exception, controls. The correctness of this result is emphasized as required, by viewing the statute in the light of its evident objective, 49 Fla.Jur.2d Statutes § 154, which, in this case, was obviously to place the burden of taxation to support the housing desired upon commercial, rather than merely residential, transactions. It was, in turn, only for the legislature to conclude that, for taxation purposes at least, such transactions would be evidenced by a multi-parcel deed and would not be involved in a conveyance of only one single-family. home. See State, ex rel. Seaboard Air Line R.R. v. Gay, 160 Fla. 445, 35 So.2d 403, 409 (1948) (“[T]he obligation of a citizen to pay taxes being purely of statutory creation, taxes can be lawfully levied, *129 assessed and collected only in the express method pointed out by the statute.”) Davis v. Florida Power Co., 64 Fla. 246, 60 So. 759, 766 (1913) (“Where there is a reasonable and practical ground of classification for legislative regulations under police power, the classification should be sustained ... since the discretion of selecting the subjects of police regulations, and the nature and extent of such regulations, must be left to the general lawmaking power, where there is no undoubted and irreconcilable conflict between the regulations and the provisions and principles of organic law.”); 16A Am.Jur.2d Constitutional Law § 388, at 78 (1979) (“The discretion of the legislature is very large in the exercise of the police power, both in determining what the interests of the public require and what measures and means are reasonably necessary for the protection of such interests.”). We squarely so held in Cohen v. Dep’t of Revenue, 531 So.2d 1356 (Fla. 3d DCA 1988) (per curiam) (table), and now do so again.
On the other hand, the appellant’s arguments for a contrary statutory interpretation[3] are not at all persuasive:
a. The position it urges most strongly, that under the general construction and definition provisions of section 1.01(1), Florida Statutes (1987), “[t]he singular includes the plural and vice versa” — so that “one” single-family residence would include 158— fails immediately under the broad language of section 1.01 itself.[4] In blanket terms, it provides that the subsequent definitions, including subsection 1, apply only “where the context will permit.” Quite obviously, a reference to a document which involves “only” “a” single-family residence cannot be deemed to include more than that. See Webster’s New International Dictionary 1 (1986) (“a ... 3a: ONE ... swords all of a length ... men all of a sort”); Webster’s, supra, at 1577 {“only ... la: a single solitary fact or instance or occurance ... one simple thing and nothing more”).
b. The appellant also claims that the view expressed here would lead to absurd results, stating, for example, that PBP could itself have avoided the surtax by taking its property in 158 separate deeds.[5] We cannot accept this argument. In the first place, it was up to the legislature to determine how the policy it had adopted was to be effectuated. 16A Am.Jur.2d Constitutional Law § 389, at 82 (“The courts cannot undertake to decide whether the means adopted by the legislature are the only means or even the best means possible to attain the end sought, for such course would vest the exercise of the police power of the state in the judicial department. ... [T]he methods, regulations and restrictions to be imposed to attain results consistent with the public welfare are purely of legislative cognizance....”) In this regard, it was not only permissible, see Trushin v. State, 425 So.2d 1126 (Fla.1982); Polakoff v. Department of Insurance, 551 So.2d 1223, 1226 (Fla. 1st DCA 1989) (“[T]he legislature has broad discretion in creating statutory classifications.... ”), but perhaps desirable to create a bright line test, with its attendant ease of administration and determination, under which a deed to a single residence, and no other, would qualify for the exemption. See 16A Am. Jur.2d, supra.
In any event, the appellant is in no position to complain of the existence of available means to escape the tax when — undoubtedly for good economic reasons of its own — it deliberately did not utilize that opportunity. As the First District stated in State of Florida Dep’t of Revenue v. *130 McCoy Motel, Inc., 302 So.2d 440, 443 (Fla. 1st DCA 1974), appeal dismissed, 307 So.2d 448 (Fla.1974):
Appellee contends that under the ruling of one of the Attorney General’s opinions which it cites, it could have negotiated a loan of $1,650,000 with Alison, could have executed a promissory note therefor and paid the documentary tax on only the $1,650,000. It argues that had it done so and thereafter executed a single note in place of that note and the second note, without changing the terms' and conditions of the two notes, it could not be argued that a documentary tax was due on the substituted note. It contends that the procedure adopted by it in the instant case achieved the same result and therefore should be taxed only on the amount of the increased obligation. We make no ruling on the legal effect of the hypothetical transaction posed by ap-pellee as such case is not before us, but even if the result under the hypothetical transaction presented by appellee is as appellee states, such contention is without merit in relation to the case sub judice. We may not concern ourselves with what might have been had appellee handled this transaction in a different way. Appellee evidently had a reason for handling the transaction as it did. The Supreme Court, in response to a similar contention in North American Company v. Green, Fla. [1959], 120 So.2d 603, said:
“We are not privileged to make the taxability of a transaction dependent upon any consideration of some alternative procedure which might not have been taxable.”[6]
We have examined the appellant’s other point and find no merit. See State Dep’t of Revenue v. Zuckerman-Vernon Corp., 354 So.2d 353 (Fla.1977).
Affirmed.

. In this regard, the provision states:
125.0167 Discretionary surtax on documents; adoption; application of revenue.—
(1) Pursuant to the provisions of s. 201.031, the governing authority in each county, as defined by s. 125.011(1), is authorized to levy a discretionary surtax on documents for the purpose of establishing and financing a Home Ownership Assistance Loan Trust Fund to assist low and moderate income families in the purchase of a home or an apartment, or the rehabilitation of an existing home or apartment. No less than 50 percent of the funds used in each county to provide such housing assistance shall be for the benefit of low income families. For the purpose of this section, "low income family” means a family whose income does not exceed 80 percent of the median income for the area, and "moderate income family” means a family whose income is in excess of 80 percent but less than 140 percent of the median income for the area. For purposes of this section, the term "home” is not limited to single-family, detached dwellings. The rate of the surtax shall not exceed the rate of forty-five cents for each $100 or fractional part thereof of the consideration therefor.

. The statute provided for adoption by county option. Only Dade County did so. Its version, contained in section 29-7 of the Metropolitan Dade County Code (1983) is slightly but not meaningfully different from the authorizing statute:
(b) Exception for single-family residences. The surtax shall not be levied or imposed on any document in which the interest granted, assigned, transferred, or conveyed is solely a single-family residence. As used herein the term "single-family residence" includes a condominium unit, a unit held through stock ownership or membership representing a proprietary interest in a corporation owning a fee or a leasehold initially in excess of ninety-eight (98) years, or a detached single-family dwelling.

. The appellant does not challenge the constitutionality of the statute as interpreted below.

. "1.01 Definitions. — In construing these statutes and each and every word, phrase, or part hereof, where the context will permit:”

. It goes on to claim, quite correctly, that a deed to more than one single-family residence, or which includes other property, could well involve a noncommercial transaction and that, as in the hypothetical case of its 158 separate deeds, a single deed to one home might well disguise an obviously commercial transfer.

. Judge Boyer’s special concurrence is likewise persuasive:
I reluctantly concur with the reasoning and conclusion above announced. "Wraparound” mortgages are a reality in present day large intricate financing arrangements. There is no logical nor reasonable basis for discriminatory taxation. "Wraparound” mortgages are not, in my view, proper subjects for discouragement. The result here reached is, unquestionably, unfair and unjust; however, until the Legislature, in its wisdom, changes the law we, as an appellate court, have no authority to do so. (See Marshall v. State, Fla.App. 1st 1974, 301 So.2d 477).
McCoy, 302 So.2d at 444.