158 So.2d 514 (1963)
Kimi T. JUDD, Appellant,
v.
Harry SCHOOLEY, as Tax Assessor of Lee County, Florida, Appellee, and
George S. Hunter, Herman J. Hastings, Mack H. Jones, Julian Hudson and J. Fred Huber, as and constituting the Board of County Commissioners of Lee County, Florida, a Political Subdivision, and Ray E. Green, as Comptroller of the State of Florida.
No. 32548.
Supreme Court of Florida.
December 13, 1963.
Henderson, Franklin, Starnes & Holt and Duane A. Reynolds, Fort Myers, for appellant.
R.W. Shaughnessy, Fort Myers, for appellee.
THORNAL, Justice.
We have for review on appeal a decision of a District Court of Appeal, which initially construed a controlling provision of the Florida Constitution.
We must decide whether a married woman, living congenially with her husband, may establish a residence in her separate property and thereby receive the tax benefits provided by Article X, Section 7, Florida *515 Constitution, F.S.A., otherwise known as the Homestead Exemption Amendment.
The undisputed facts are revealed by the decision of the District Court. Schooley v. Judd, Fla.App., 149 So.2d 587. For a number of years prior to 1958, Mrs. Judd and her husband owned certain real estate in Lee County. During this period they were both residents of Florida. In December 1958, Mr. Judd conveyed the property to his wife. At that time he announced the removal of his domicile from Lee County to Washington, D.C., where he also owned a home. He changed his domicile for business reasons to enable him to meet certain legal requirements to serve on the board of directors of a corporation in the District of Columbia. Mrs. Judd continued to occupy the Florida property. She also continued to vote in Lee County. She holds a Florida drivers license and maintains a Florida license tag on her automobile. The Judds continue to live together harmoniously as husband and wife and for extended periods of each year reside together in the home on the real estate in question.
In the year 1961 Mrs. Judd applied for the constitutional homestead tax exemption benefits provided by Article X, Section 7, Florida Constitution. The county tax assessor refused to allow the claimed exemption for the announced reason that:
"Husband claims domicile other than Florida. Domicile of wife follows that of husband unless separate set-up for purpose of legal separation or divorce."
The County Commissioners, as a board of equalization, upheld the decision of the tax assessor. Mrs. Judd thereupon instituted the instant proceeding for a declaratory decree pursuant to Section 192.19, Florida Statutes, F.S.A. The chancellor found with the plaintiff. He held that she was entitled to the claimed exemption.
Initially, the decree was brought to this Court by direct appeal from the circuit court. Having the view that the chancellor did not, by his decree, construe a controlling provision of the Constitution, we transferred the appeal to the District Court of Appeal, Second District. Schooley v. Judd, Fla. 1962, 142 So.2d 727. The District Court, by its decision now under review, did construe a controlling constitutional provision. The matter now comes to us on appeal to review that decision.
The appellant here has also filed a petition for a writ of certiorari to review the same decision because of alleged conflicts with prior decisions of this Court. This procedure apparently was adopted out of an abundance of caution in the event that we should decline jurisdiction of the appeal. Our examination of the decision of the District Court has led us to conclude that that court did initially construe a controlling provision of the Constitution. We, therefore, take jurisdiction of the appeal and simultaneously deny the collateral petition for certiorari.
It should be recalled that the chancellor granted the claimed exemption. The majority of the District Court reversed. In doing so the District Court looked to the language of Article X, Section 7, Florida Constitution, which reads in part as follows:
"Every person who has the legal title * * * to real property in this State and who resides thereon and in good faith makes the same his or her permanent home, * * * shall be entitled to an exemption * * *. The Legislature may prescribe appropriate and reasonable laws regulating the manner of establishing the right to said exemption."
The District Court took cognizance of the rule that normally it is generally recognized that a wife's residence or domicile is that of her husband. It further noted the now accepted exemption to the effect that a wife may acquire a separate residence "if it should become proper or necessary *516 for her to do so." Merritt v. Merritt, Fla. 1951, 55 So.2d 735. By its decision, which we now review, the District Court held that the constitutional requirement of "good faith" implicitly impells the conclusion that a married woman cannot, in good faith, establish a separate residence unless she is compelled to do so by the necessity of a degenerating marital relationship. Stated otherwise, it was the holding that in order to establish "good faith" the married woman must disclose facts which would demonstrate that it is necessary for her to live separate and apart from her husband. This led to the conclusion that when a husband and wife continue to live congenially in the marital relationship, as is the case here, the wife cannot legally establish a Florida residence when her husband is domiciled in another jurisdiction.
We have the view that the decision of the District Court places too great an emphasis on the common-law fiction that by marriage a woman's identity is absorbed into that of her husband. Under this concept, which permeated the law for several hundred years, it was held that upon marriage a woman lost her independence as a legal entity; her property immediately came under the control of her husband; he was entitled to her earnings, if any; she was in all respects subject to his control and domination. Indeed, the rule was as Milton expressed it in Paradise Lost, Book X, Line 195:
"And to thy husband's will Thine shall submit; he over thee shall rule."
However, we have traveled a long way since Milton, as every husband knows. We deem it unnecessary to continue to cloud the law with the mist of an out-moded fiction that has been dispelled by the light of present-day realities.
Married women's "emancipation statutes," such as Sections 708.08-708.10, Florida Statutes, F.S.A., enacted twenty years ago, have demonstrated a legislative intention to liberate married women from most of the economic bonds which previously subordinated them to the control of their husbands. In many areas where the legislatures have not acted, the women themselves have taken over and announced their own independence and equality. While continuing to recognize the traditional responsibilities of mothers and housewives, they have moved out into social, political, and economic affairs. They now own or control much of the wealth of the country; they complete in business; they have become governors, judges and legislators, and, when needed, they have joined the ranks of breadwinners.
Article X, Section 7, Florida Constitution, as amended in 1938, eliminated from the exemption requirements, the necessity that one be the "head of a family", or even a "citizen" of Florida to enjoy the homestead exemption tax benefit. An individual property owner enjoys the benefit even though he occupies the property alone. Florida citizenship is not required. Smith v. Voight, 158 Fla. 366, 28 So.2d 426. All that is now required is that the property owner reside on the property and in good faith make "the same his or her permanent home * * *." By Section 192.14, Florida Statutes, F.S.A., the Legislature has made it clear that permanent residence "shall not be construed so as to require continuous physical residence on the property * * *." By this statute residence or permanent residence means only that place "which the person claiming the exemption may rightfully and in good faith call his home to the exclusion of all other places * * *." The cited statute is merely a legislative implementation of the clear import of the Constitution itself.
Under modern statutes a married woman may now own separate property, enter into contracts, sue and be sued, engage in business, and otherwise conduct her affairs almost with the same absence of restraint as if she were a feme sole. Section 708.08, supra. We agree with the Virginia Supreme Court of Appeals when it held that there is no valid reason to prohibit *517 her from establishing a residence of her own even though she continues to live in a congenial marital relationship with her husband, who happens to be domiciled in another jurisdiction. When a claim is made for benefits, such as those announced by the Florida Constitution, it is, of course, essential that the residence be established in good faith but we see no justification for adding the requirement that the independent residence of the wife must come about as the result of a necessity that drives her from a former conjugal abode. Commonwealth of Virginia v. Rutherfoord, 160 Va. 524, 169 S.E. 909, 90 A.L.R. 348. In 1947 the Attorney General of Florida reached a similar conclusion in construing Article X, Section 7, supra. Opinions of the Attorney General, 047-389.
In the instant case there was no finding of bad faith. The exemption was denied purely on the theory of the fiction which has no place in present-day life. This led to the further requirement that good faith can be demonstrated only if it is coupled with a showing of necessity for a separate residence. Our holding simply is that a showing of necessity to establish the separate abode is not essential to a showing of good faith under Article X, Section 7, supra.
We have not overlooked our recent opinion in Juarrero et ux. v. McNayr et al., Fla., 157 So.2d 79. There we simply held that an alien living in Florida under a temporary visa could not obtain the benefits of homestead exemption because it was legally impossible for him to claim the property as his "permanent home." The distinction is that in the instant case we have held that it is legally possible for a married woman, in good faith, to claim a permanent home in Florida property even though her husband is legally domiciled elsewhere. Whether "good faith" is proven is a matter to be decided in each case. Here the only question was whether proof of necessity was an essential element of proof of "good faith."
The decision of the District Court of Appeal is reversed and the cause is remanded to that court for the entry of a judgment consistent herewith.
It is so ordered.
ROBERTS, Acting C.J., CALDWELL and HOBSON (Ret.), JJ., and WALKER, Circuit Judge, concur.