DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VENICE L. ENDSLEY,**
Appellant,

v.

**BROWARD COUNTY, FINANCE AND ADMINISTRATIVE SERVICES DEPARTMENT, REVENUE COLLECTIONS DIVISION; LORI PARRISH,**
as Broward County Property Appraiser, et al.,
Appellees.

No. 4D14-3997

[March 23, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Mily Rodriguez-Powell, Judge; L.T. Case No. CACE-06-016764.

Marie A. Borland and Robert E. V. Kelley, Jr. of Hill, Ward & Henderson, P.A., Tampa, for appellant.

Michael W. Moskowitz and Scott M. Zaslav of Moskowitz, Mandell, Salim & Simowitz, P.A, Fort Lauderdale, for appellee Lori Parrish, as Broward County Property Appraiser.

Pamela Jo Bondi, Attorney General, and Robert P. Elson, Assistant Attorney General, Tallahassee, for appellee Marshall Stranburg, as Executive Director of the State of Florida Department of Revenue.

FORST, J.

Appellant Venice Endsley brought a suit against the Broward County Property Appraiser after it removed her homestead tax exemption due to the fact that her then-husband was receiving a residency-based tax exemption for his out-of-state residence during the same time period. Appellant now appeals the entry of summary judgment in favor of the County and the Property Appraiser, arguing that the pertinent Florida Constitution provision limiting family units to one homestead exemption does not apply when the second exemption is for an out-of-state residence. As set forth below, we disagree with Appellant's arguments and affirm the trial court's entry of summary judgment.

## Factual Background

Appellant and her husband were married in 1944 and remained in an intact, congenial marriage until the husband's death in 2007. Appellant and her husband comingled their finances throughout this time period and jointly owned two properties, located in Florida and Indiana, until 1986. That year, Appellant transferred her interest in the Indiana property to her husband, leaving the property entirely in his name. Husband, meanwhile, transferred all interest in the Florida property to Appellant. The Florida property has been Appellant's permanent residence since this time and she received a homestead exemption on her property taxes for this property from 1986 through 2006. Her husband likewise received a residency-based property tax exemption on the Indiana property throughout the same time frame.

In August 2006, the Broward County Property Appraiser learned that Appellant and her husband were each receiving a residency-based tax exemption. Upon this discovery, the Appraiser removed Appellant's exemption on the Florida property for tax years 1996-2005. The Appraiser's action was based on Article VII, Section 6(b) of the Florida Constitution, which provides that "[n]ot more than one exemption shall be allowed any individual or family unit . . . ." Appellant's husband cancelled his Indiana exemption in 2006 and Appellant was granted a homestead exemption on the Florida property again in 2007. However, as a result of the cancellation of the Florida exemption, the Appraiser reset the value of Appellant's Florida property to its market value, rather than the lower value under the "Save Our Homes" provision in Article VII, section 4(d) of the Florida Constitution.

Appellant filed an action in the lower court seeking a refund of the additional tax monies she was forced to pay for tax years 2002-2005, an order requiring the Appraiser to grant a homestead exemption for tax year 2006, and an order requiring the Appraiser to revalue the Florida property under the Save Our Homes valuation scheme for years 2007 onward. Appellant also sought a declaration that section 196.031(5), Florida Statutes, was unconstitutional. The parties filed competing motions for summary judgment. The trial court granted the Appraiser's motion, concluding that Appellant and Husband were a single family unit and could not claim separate homestead exemptions.

## Legal Background

The law is well-settled that a harmonious family unit, even if living

apart, cannot claim more than one homestead exemption in the State of Florida. *See Brklacic v. Parrish*, 149 So. 3d 85 (Fla. 4th DCA 2014); *cf. Wells v. Haldeos*, 48 So. 3d 85, 88 (Fla. 2d DCA 2010) (holding spouses that "have no financial connection with and do not provide benefits, income, or support to each other," yet are still technically married, can establish separate "family units" when their lives are sufficiently attenuated, and both spouses can receive homestead exemptions for their separate primary residences, including one out-of-state residence). Here, like in *Brklacic* (and unlike in *Haldeos*), Appellant and her husband were happily married, but declared two separate permanent residences. In *Brklacic*, the two residences that had received homestead exemptions were both in Florida, albeit different counties. *Brklacic*, 149 So. 3d at 86. By contrast, in the instant case, Appellant received an exemption for her residence *in Florida* while her husband received an exemption for his *out-of-state* residence. Appellant argues that Article VII, Section 6(b) does not apply to this situation and is limited to situations, like *Brklacic*, where both residences are in Florida.

The Second District Court of Appeal considered a family claiming residency-based tax benefits in multiple states in *Wells v. Vallier*, 773 So. 2d 1197 (Fla. 2d DCA 2000). The court concluded that the couple was "entitled to receive a homestead tax exemption [in Florida] despite the fact that they also received a residency-based property tax credit in the State of New Hampshire," because the couple were "permanent residents of . . . Florida." *Id.* at 1198.

In 2001, the Legislature added a new provision to section 196.031, Florida Statutes, which addressed the ability of persons to claim homestead exemptions in multiple states. Section 196.031(6), Florida Statutes (2002), stated:

> A person who is receiving or claiming the benefit of an ad valorem tax exemption or a tax credit in another state where permanent residency is required as a basis for the granting of that ad valorem tax exemption or tax credit is not entitled to the homestead exemption provided by this section. This subsection does not apply to a person who has the legal or equitable title to real estate in Florida and maintains thereon the permanent residence of another legally or naturally dependent upon the owner.

The Staff Analysis for the bill altering this section specifically mentioned the Second District's ruling in *Vallier* as contradictory to the new statutory language. Fla. Staff Analysis, S.B. 1642 (April 5, 2001). This provision

was moved to section 196.031(5) effective January 29, 2008. § 196.031(5), Fla. Stat. (2008).

## Analysis

"The determination of a statute's constitutionality and the interpretation of a constitutional provision are both questions of law reviewed de novo." *Garcia v. Andonie*, 101 So. 3d 339, 343 (Fla. 2012). "Legislative intent is the polestar that guides a court's statutory construction analysis." *Bautista v. State,* 863 So.2d 1180, 1185 (Fla. 2003). When construing a statute or constitutional provision, we should first look to the plain meaning of the words used; "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Fla. Convalescent Ctrs. v. Somberg*, 840 So. 2d 998, 1000 (Fla. 2003) (alteration in original) (quoting *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984)).

In the context of tax laws, the Florida Supreme Court has held "[a]lthough taxing statutes are strictly construed against a taxing authority, exemptions are strictly construed against the taxpayer." *Dep't of Revenue v. Anderson*, 403 So. 2d 397, 399 (Fla. 1981); *Parrish v. Pier Club Apts., LLC*, 900 So. 2d 683, 685 (Fla. 4th DCA 2005) ("[S]tatutes providing for an exemption from ad valorem tax are to be strictly construed, and any ambiguity is to be resolved against the taxpayer and against exemption." (citation omitted)).

Our initial task is to determine the extent of the homestead exemption provided by the Florida Constitution. That document states, in relevant part:

> Every person who has the legal or equitable title to real estate and maintains thereon the permanent residence of the owner, or another legally or naturally dependent upon the owner, shall be exempt from taxation thereon, . . . upon establishment of right thereto in the manner prescribed by law.

Art. VII, § (6)(a), Fla. Const. This broad grant of homestead exemptions is limited by the next subsection, which states that "[n]ot more than one exemption shall be allowed any individual or family unit or with respect to any residential unit." Art. VII, § (6)(b).

4

The trial court found that the plain language of the provision meant that only one homestead exemption was allowed, regardless of location. We agree. The meaning of the Constitution's command that "not more than one exemption shall be allowed any individual or family unit" appears clear on the face of the document. Faced with such unambiguous language, we have no need to turn to complex analysis or employ canons of construction. Nor are we inclined, as Appellant suggests, to rewrite the Constitution to add new terms to this provision. The courts, after all, exist not to re-draft the laws of this State, but rather to interpret what has been given to us by those tasked with that responsibility. Here, the chosen language is clear, as is our reading of it.

The Second District's opinion in *Vallier* is not inapposite. In that case, the court wasn't focused on Article VII, section 6(b)'s "[n]ot more than one exemption" rule. Instead, it solely dealt with Article VII, section 6(a)'s limitation of exemptions to "the permanent residence" of the party seeking the exemption. It does not appear that there was a section 6(b) issue in that case, as the property owners were merely receiving "a $100 per year residency-based property tax *credit*" for their "summer home" in New Hampshire. *Vallier*, 773 So. 2d at 1198 (emphasis added).

Our determination of the Constitutional issue effectively decides the case in the Property Appraiser's favor. Nonetheless, we also consider Appellant's argument that section 196.031(5) unconstitutionally limits the class of persons entitled to a homestead tax exemption. "There is a strong presumption that a statute is constitutionally valid, and all reasonable doubts about the statute's validity must be resolved in favor of constitutionality." *Parkerson v. State*, 163 So. 3d 683, 688 (Fla. 4th DCA 2015) (quoting *State v. Catalano*, 104 So. 3d 1069, 1075 (Fla. 2012)). "As a result, the party challenging the constitutionality of a statute bears a heavy burden of establishing its invalidity." *Id.* (quoting *Montgomery v. State*, 69 So. 3d 1023, 1026 (Fla. 5th DCA 2011)).

Section 196.031(5) states:

> A person who is receiving or claiming the benefit of an ad valorem tax exemption or a tax credit in another state where permanent residency is required as a basis for the granting of that ad valorem tax exemption or tax credit is not entitled to the homestead exemption provided by this section.

§ 196.031(5). Appellant argues this language adds a substantive requirement to the homestead scheme laid out in Article VII, section 6 of the Florida Constitution.

"[A]lthough the Legislature is permitted to enact laws regulating 'the manner' of establishing the right to the constitutional homestead tax exemption, it cannot substantively alter or materially limit the class of individuals entitled to the exemption under the plain language of the constitution." *Andonie,* 101 So. 3d at 345. In *Andonie,* the Florida Supreme Court considered the constitutionality of a homestead exemption statute providing that the property owner must reside on the property to be entitled to a homestead exemption.[1] The Court held the residency requirement was "inconsistent with the requirements of the constitution" and "substantively limit[ed] and narrow[ed] the class of property owners and taxpayers eligible for the ad valorem tax exemption under the plain language of the Florida Constitution." *Id.* at 345.

The current case is distinguishable from *Andonie.* Unlike the limitation placed on the homestead exemption in that case, the statutory restriction here is grounded in the language of the constitutional provision, namely Article VII, section 6(b).

As stated above, the statute prevents "a person who is receiving or claiming the benefit of an ad valorem tax exemption or a tax credit in another state where permanent residency is required as a basis for the granting of that ad valorem tax exemption" from also claiming a Florida homestead exemption. § 196.031(5). In this case, although Appellant's husband was responsible for claiming the Indiana tax exemption,[2] Appellant still "received . . . the benefit" of this exemption by virtue of the commingling of funds with her husband. The reduction in the overall tax liability owed by the couple in the State of Indiana directly provided

---

[1] "Every person who, on January 1, has the legal title or beneficial title in equity to real property in this state and *who resides thereon* and in good faith makes the same his or her permanent residence, or the permanent residence of another or others legally or naturally dependent upon such person, is entitled to an exemption . . . ." § 196.031(1), Fla. Stat. (2006) (emphasis added).

[2] Appellant did not argue in her initial brief that the tax exemption that her late husband received from Indiana was something other than the "ad valorem tax exemption or a tax credit" contemplated by the Florida statute at issue, or that "permanent residency" was not required in Indiana "as a basis for the granting of that ad valorem tax exemption or tax credit." In fact, the initial brief accepts as "fact that [Appellant's] husband applied for and received a residency-based exemption in Indiana while in an 'intact' marriage with [Appellant] . . . ." We therefore base our analysis on the assumption that the statute applies to the instant case.

Appellant with an economic benefit, bringing her within the purview of section 196.031(5).

Finally, we hold that Appellant is not entitled to have her property revalued under the "Save Our Homes" provision found in Article VII, section 4(d) of the Florida Constitution. That provision limits the growth of assessed value for property tax purposes, but applies only to properties that qualify as a homestead under Article VII, section 6. Art. VII, § 4(d), Fla. Const. Article VII, section 4(d)(6) states that "[i]n the event of a termination of homestead status, the property shall be assessed as provided by general law." Because Appellant's property lost its homestead status during tax years 2002-2006, she likewise lost the protections of the Save Our Homes provision.

## Conclusion

Appellant's receipt of multiple homestead exemptions is specifically prohibited by the language of Article VII, section 6(b) of the Florida Constitution and section 196.031(5), which echoes the Constitutional prohibition. Because Appellant benefitted from homestead exemptions both in and out of the State of Florida during the time period at issue, the trial court properly entered summary judgment in favor of the Property Appraiser.

*Affirmed.*

MAY, J. and SCHER, ROSEMARIE, Associate Judge, concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***